NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-3087

MARY A. TABER,

Petitioner,

v.

DEPARTMENT OF THE INTERIOR,

Respondent.

W. Craig James, Mauk & Burgoyne, of Boise, Idaho, for petitioner.

Armando Rodriguez-Feo, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were Peter D. Keisler, Acting Attorney General, Jeanne E. Davidson, Director, and Steven J. Gillingham, Assistant Director.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2007-3087

MARY A. TABER,

Petitioner,

v.

DEPARTMENT OF THE INTERIOR,

Respondent.

_____

DECIDED:  October 9, 2007

_____

Before BRYSON, <u>Circuit Judge</u>, FRIEDMAN, <u>Senior Circuit Judge</u>, and KEELEY, <u>Chief District Judge</u>.[*]

BRYSON, <u>Circuit Judge</u>.

This case once again presents us with the question whether a federal employee whose responsibilities included various criminal law enforcement activities was entitled to be classified as a "law enforcement officer," or "LEO," for purposes of the enhanced retirement benefits that federal law provides to such employees.  Both the Merit Systems Protection Board and this court have made clear that the eligibility standards for LEO status are exacting and that even positions in which the incumbents have

_____

[*]     Honorable Irene M. Keeley, Chief Judge, United States District Court for the Northern District of West Virginia, sitting by designation.

significant law enforcement responsibilities frequently do not qualify for LEO status. Petitioner Mary A. Taber sought LEO retirement credit for several positions that she held with the National Park Service in which she performed various law enforcement functions. After the Department of the Interior denied her request for LEO status, she appealed that decision to the Merit Systems Protection Board. Following a hearing, the Board sustained the agency's decision, holding that Ms. Taber did not satisfy the applicable standards for LEO retirement credit. Docket No. DE-0842-04-0445-I-4. We affirm.

I

Ms. Taber served in a number of different positions with the National Park Service between 1983 and 1994. She served as Park Technician, Park Ranger, and Supervisory Park Ranger at Yellowstone National Park, and she occupied the position of Park Ranger at Joshua Tree National Monument. Because her service through the years involved various kinds of policing activity, she asked her agency to certify her for the special statutory retirement benefits that come with LEO status.

Among other things, LEO status entitles an employee to retire at age 50 with full benefits after only 20 years of service. 5 U.S.C. §§ 8336(c), 8412(d)(2). Because the benefits to those who enjoy LEO status are expensive for the government and because the early retirement option results in the loss of many experienced employees years before they would otherwise leave the government, the statutes that provide for LEO eligibility have been strictly construed. See Watson v. Dep't of the Navy, 262 F.3d 1292, 1298 (Fed. Cir. 2001); Hannon v. Dep't of Justice, 234 F.3d 674, 677 (Fed. Cir. 2000); Bingaman v. Dep't of the Treasury, 127 F.3d 1431, 1435 (Fed. Cir. 1997). By

statute and regulation, only those federal employees whose duties include "primarily the investigation, apprehension, or detention of individuals suspected of offenses against the criminal laws of the United States" qualify as LEOs. 5 U.S.C. §§ 8331(20), 8401(17); 5 C.F.R. §§ 831.902, 842.802. Congress "clearly intended to make eligibility for LEO credit restrictive and not to extend the LEO benefits to all persons who work in law enforcement in some capacity." Luke v. Dep't of Health & Human Servs., 320 F.3d 1377, 1382-83 (Fed. Cir. 2003). In particular, employees whose primary duties involve "maintaining law and order, protecting life and property, [and] guarding against or inspecting for violations of law" do not qualify for LEO retirement credit. 5 C.F.R. §§ 831.902, 842.802; see Watson, 262 F.3d at 1303.

Applying those standards, the Department of the Interior denied Ms. Taber's request to be accorded LEO credit under either the Civil Service Retirement System (CSRS) or the Federal Employee Retirement System (FERS) for the various Park Ranger and Park Technician positions she held between 1983 and 1994. The agency denied her request on the ground that her various positions did not satisfy the strict standards for LEO eligibility, but instead principally involved nonqualifying activities such as visitor protection, search and rescue, resource management, emergency medical work, patrolling, and campground management.

Ms. Taber appealed the agency's decision to the Merit Systems Protection Board. Following an evidentiary hearing, the administrative judge who was appointed to the case upheld the agency's decision denying Ms. Taber's request for LEO retirement benefit credit for the contested positions. After reviewing in detail each of the positions Ms. Taber held and the responsibilities she performed in those positions, the

administrative judge noted that Congress did not intend to extend LEO benefits to all persons who worked in law enforcement in any capacity and concluded that Ms. Taber had failed to satisfy the statutory definition of a "law enforcement officer" in that she had failed to show that her primary duties involved the investigation, apprehension, or detention of individuals suspected or convicted of federal criminal offenses. She now petitions this court for review of the Board's decision.

II

Ms. Taber first argues that the administrative judge violated the Board's own regulations because the administrative judge's initial decision did not constitute a reasoned opinion providing an adequate basis for review. Spithaler v. Merit Sys. Prot. Bd., 1 M.S.P.R. 587, 588-89 (1980) (citing 5 C.F.R. § 1201.111(b)(1)). She contends that the administrative judge "simply provided a cursory gloss on what he believed the applicable law to be and then recited a series of what were essentially uncontroverted facts, followed by a summary determination that the Petitioner did not meet her burden of proof." The fact that the transcript of the evidentiary hearing was 139 pages long and the administrative judge's opinion summarized the evidence in only 13 pages indicates, according to Ms. Taber, that the administrative judge's opinion failed to comply with the requirements imposed by the Board's regulations.

We reject that argument for several reasons. As the Board has explained, the pertinent Board regulation requires administrative judges to

> identify all material issues of fact, summarize the evidence on each such issue sufficiently to disclose the evidentiary basis for the presiding official's findings of fact, set forth those findings clearly and explain how any issues of credibility were resolved and why, describe the application of burdens of proof and address all material legal issues in a fashion that reveals the

presiding official's conclusions of law, legal reasoning and the authorities on which that reasoning rests.

Spithaler, 1 M.S.P.R. at 589 (quoting 5 C.F.R. § 1201.111(b)(1)). In the Spithaler case, on which Ms. Taber relies, the Board held that a three-sentence initial decision, which simply announced the administrative judge's disposition of the case without any analysis, failed to satisfy that regulatory requirement. In this case, by contrast, the administrative judge wrote a 13-page opinion that identified the principal legal issue, summarized the facts bearing on that issue, and made clear the legal reasoning that led the administrative judge to reject Ms. Taber's claim. Ms. Taber argues that the administrative judge failed to address "any number of material issues," yet she cites only one such issue—her argument that her service prior to 1989 should have been evaluated under the legal standards applicable to CSRS employees rather than those applicable to FERS employees. As the government points out in its brief, however, the standards for those two classes of employees are similar, and the differences were not material to the administrative judge's analysis of Ms. Taber's case. Because the administrative judge's failure to address that legal question had no effect on the outcome of this case, it was not critical that the administrative judge distinguish between those periods of Ms. Taber's service that were subject to the CSRS standards and those that were subject to the FERS standards.

More generally, the question whether an administrative judge has complied with the Board's regulatory requirements regarding the contents of an initial decision is primarily a question for the Merit Systems Protection Board, not this court, to decide. The Board has frequently had occasion to address whether administrative judges have complied with regulatory requirements that the Board has imposed on them, and the

Board has developed standards for the adequacy of such opinions. See Smart v. Dep't of the Army, 105 M.S.P.R. 475, 480 (2007); Mahaffey v. Dep't of Agric., 105 M.S.P.R. 347, 355 (2007); Hagen v. Dep't of Transp., 103 M.S.P.R. 595, 599 (2006). But in the absence of some asserted statutory or constitutional inadequacy—and no such inadequacy is claimed here—an asserted departure from the standards that the Board has imposed regarding the adequacy of administrative judges' opinions will normally not serve as a basis for reversal by this court. See Haebe v. Dep't of Justice, 288 F.3d 1288, 1302 n.32 (Fed. Cir. 2002) (Board's requirements for initial decisions are "general internal procedural requirements that the MSPB has established for its adjudicative processes, and our review of the AJ's fulfillment of these procedural processes is in that light"); Wissman v. Social Sec. Admin., 848 F.2d 176, 178 (Fed. Cir. 1988) (Board's standard for drafting initial decisions "is nothing more than the board's directive to its subordinate officials to proceed according to established regulatory procedures"). Ms. Taber has cited no case from this court in which asserted noncompliance with the Board's regulation governing the contents of initial decisions has resulted in reversal of a Board decision, and we have found none.

Even assuming that it is part of this court's reviewing responsibility to scrutinize an administrative judge's compliance with the Board's regulations governing how Board decisions should be written, we disagree with Ms. Taber that the administrative judge's opinion in this case violated the regulatory requirements. The opinion set forth the pertinent legal standard, summarized the facts in great detail, and set forth the administrative judge's conclusion that the facts did not satisfy the legal standard for establishing Ms. Taber's claim to LEO status. Despite Ms. Taber's protestations, the

factual summary in the administrative judge's opinion was amply sufficient. While the legal analysis could have been more extensive, we are satisfied that it was sufficient to demonstrate the administrative judge's reasoning and to permit informed judicial review. We therefore reject Ms. Taber's argument on this issue.

III

Ms. Taber next argues that the administrative judge erred in his characterization of the legal test for determining LEO status. With this court's approval, the Board has adopted a "position-oriented" approach to determining LEO status. See Crowley v. United States, 398 F.3d 1329, 1337 (Fed. Cir. 2005); Watson, 262 F.3d at 1297-1301. That is, the Board and this court have held that the primary question in deciding whether an employee is entitled to LEO status is whether the employee's position is one that exists for the purpose of investigation, apprehension, or detention of persons suspected or convicted of violating federal criminal laws. The question is not how the employee in question actually spends his or her time, but what duties the employee's position entails. Of course, as this court has explained, the employee's actual tasks may bear on what the position entails, and thus be relevant to the ultimate "position-oriented" inquiry. See Watson, 262 F.3d at 1301-02. In the end, however, the question turns on the nature of the employee's position, not the particular tasks to which the particular employee is assigned.

Ms. Taber argues that the administrative judge misapplied those principles by failing to give weight to Ms. Taber's actual duties in determining whether any of her positions were entitled to LEO status. She focuses in particular on the administrative judge's statement that "if the [incumbent's] position does not exist for the purpose of

investigation, apprehension, or detention of persons suspected or convicted of violating the criminal laws of the United States, the incumbent is not entitled to LEO credit no matter how long she spends each day performing LEO-type duties." That statement is potentially confusing, as it could be taken, standing alone, as suggesting that Ms. Taber's actual duties are irrelevant to whether her position is entitled to LEO status. In context, however, we do not interpret the administrative judge's statement in that manner. Following the statement in question, the administrative judge described in detail the actual duties that Ms. Taber performed in her various positions. That lengthy discussion of Ms. Taber's actual duties would have been wholly unnecessary if the administrative judge had regarded her actual duties as irrelevant to determining LEO eligibility for each of the disputed positions.

Moreover, as indicated, the administrative judge's summary of Ms. Taber's actual duties, with which Ms Taber does not take issue, demonstrates that those duties did not consist primarily of qualifying LEO activities. The OPM regulations indicate that "primary" duties are those that are "paramount in influence or weight; that is, constitute the basic reasons for the existence of the position," occupy "a substantial portion of the individual's working time over a typical work cycle," and are assigned "on a regular and recurring basis." 5 C.F.R. §§ 831.902, 842.802. Duties that are performed on an emergency, incidental, or temporary basis are not primary. Id.

The evidence recited by the administrative judge showed that, under the applicable tests, qualifying LEO activities did not constitute the "primary" duties of Ms. Taber's position, either as described or as performed. For example, the administrative judge noted that although Ms. Taber was involved in criminal investigations and helped

in making arrests and transporting prisoners from time to time, the record showed that she made only four arrests during one year and five during another year. During most of the period at issue, according to the record, a major portion of her work consisted of patrolling roads in Yellowstone National Park and issuing traffic citations. Occasionally that activity resulted in arrests. Our cases have established, however, that the type of activity in which she was engaged, such as patrolling, enforcing traffic laws, and acting as a first responder to emergencies or potential crimes, does not constitute qualifying LEO activity unless the employee's primary responsibilities include the investigation and apprehension of criminal suspects. See Watson, 262 F.3d at 1304; Luke, 320 F.3d at 1381. Accordingly, in light of the findings made by the administrative judge, we sustain the Board's conclusion that Ms. Taber is not entitled to LEO credit for the periods of her service that are at issue in this case.

In her reply brief, Ms. Taber contends that the Board's decision in this case conflicts with the Board's decision in an earlier case, Ferrier v. Office of Personnel Management, 66 M.S.P.R. 241 (1995). Setting aside the fact that Board decisions are not binding on this court, the facts of that case suggest that the employee was more extensively involved in the investigation and apprehension of criminal suspects. Moreover, the Board itself has not applied Ferrier in a manner that dictates that Ms. Taber's positions would qualify for LEO status. In a series of cases following the Board's decision in Watson, the Board has held that activities such as patrolling for purposes of property protection and traffic control are not ordinarily considered LEO-qualifying activities. See Fagergren v. Dep't of the Interior, 98 M.S.P.R. 649, 653 (2005); Street v. Dep't of the Navy, 90 M.S.P.R. 652, 660 (2002); Koenig v. Dep't of the

<u>Navy</u>, 91 M.S.P.R. 1, 9-10 (2001). The Board has made clear that it would no longer regard as authoritative the decisions prior to <u>Watson</u> that suggested that such activities constituted LEO activities. <u>See</u> <u>Koenig</u>, 91 M.S.P.R. at 10. Those cases, rather than <u>Ferrier</u>, indicate how the Board currently approaches claims for LEO eligibility by persons in positions similar to Ms. Taber's.

IV

Finally, Ms. Taber argues that the administrative judge improperly declined to permit her attorney to make a closing statement at the conclusion of the evidentiary hearing in her case. The Board has held that the question whether to permit closing argument is a matter committed to the discretion of the administrative judge. <u>See</u> <u>Ford v. Dep't of the Navy</u>, 43 M.S.P.R. 495, 500 (Fed. Cir. 1990). A Board regulation, 5 C.F.R. § 1201.58(a), makes the same point by clear implication. That regulation provides that the record of a hearing will ordinarily close at the conclusion of the hearing, but that "[w]hen the judge allows the parties to submit argument," the record will remain open for that purpose. The regulation thus plainly contemplates that in some cases the administrative judge will not permit the parties to present closing argument.

Ms. Taber has not shown that the administrative judge abused his discretion in this case by declining to hear closing argument. Instead, she merely points to what she regards as the administrative judge's legal errors in the case as indicating that the administrative judge should have permitted closing argument so as to avoid making those errors. It is open to question whether an administrative judge's refusal to permit closing argument could ever constitute reversible error on a petition for review to this

court.  But even if there might be a case in which denial of closing argument would be reversible error on appeal to this court, this is certainly not such a case.

In sum, although the positions at issue in this case involved many activities that would ordinarily be regarded as constituting law enforcement, the statutory and regulatory standards for obtaining LEO retirement credit are restrictive.  Based on those standards, we hold that the Board did not commit reversible legal error in the proceedings leading to its decision in this case and that substantial evidence supports the Board's finding that the positions in question were not LEO positions.